JOHN P. GALLOWAY, AS SHERIFF OF MARION COUNTY, FLORIDA, *Plaintiff in Error,* v. MAURICE STRAUSS, *Defendant in Error.*

Opinion Filed May 11, 1914.

1. The statutory provision requiring a license "for each place of business and each bar or place where liquor is sold to

customers," should be construed in the light of the recognized policy of this State to keep the different races of persons from commingling in public places.

2. Where a place kept for the sale of liquors is so arranged that in entering the place and when being served the members of one race are separated by a partition from the members of the other race, but the arrangement is such that in good faith and for all practical purposes, the same bar tender may serve members of each race from the same single general bar or place where liquor is sold to customers, only one license is required.

Writ of Error to Circuit Court for Marion County; W. S. Bullock, Judge.

Order affirmed.

*Hocker & Martin,* for Plaintiff in Error;

*H. M. Hampton,* for Defendant in Error.

PER CURIAM.—Maurice Strauss, prior to the first day of October, 1913, obtained a permit to engage in and carry on the business of a retail liquor dealer in the City of Ocala, Prescinct No. 1 of Marion County, at No. 114 South Magnolia Street. On the 1st of October, 1913, the Tax Collector of Marion County granted him the license on payment of $1,000.00, and he engaged in the said business. On, to-wit, the first of January, 1914, the Tax Collector demanded of him another license fee of $1,000.00 which he refused to pay and he was arrested. He sued out a writ of *Habeas Corpus,* and on the hearing, on an agreed statement of facts, the Circuit Judge discharged him from custody. Galloway, as Sheriff, etc., sued out a writ of error from the order discharging the petitioner

Strauss, and assigns as erroneous the order of the Circuit Judge.

This case depends upon the proper construction of the first paragraph of Section 31, Chapter 6421, Laws of 1913, as applied to the facts in this case. This paragraph is as follows:

"Dealers in Spirituous, Vinous or Malt Liquors, shall pay a license tax of one thousand ($1,000.00) dollars, in each county and for each place of business, and each bar or place where liquor is sold to customers shall consti- tute a separate place of business under this Act, and shall require a separate license. Five hundred ($500.00) dollars shall go to the county and fiv e hundred ($500..00) dollars shall go to the State, and any incorporated city or town may require an additional tax of not less than two hundred and fifty ($250.00) dollars. Provided, That whenever any such business is located outside the cor- porate limits of any city or town, the owner or owners of such business shall pay a county license tax to the county where the business is located equal in amount to the sum total of the license tax that would be assessed for both the municipality and county for each such place of business, if such place of business were located within the limits of a city or town; Provided, further, That no fractional license shall be issued for State, county or municipal purposes to dealers in spirituous, vinous or malt liquors, the dealers paying the same and receiving a license therefor shall be authorized to sell spirituous, vinous or malt liquors, or any such liquors, but neither spirituous, vinous or malt liquors shall be permitted to be sold unless said license tax is first paid."

The agreed statement of facts on which the case was heard by the Circuit Judge is as follows:

"Come now the parties in the above styled cause, by

their counsel undersigned, at the hearing of said cause, and agree that the affidavit and warrant in this cause are based upon the following statement of facts:

The petitioner, Maurice Strauss, on the first day of October, 1913, obtained a license from the Tax Collector of Marion County, Florida, to engage in the business of a dealer in spirituous, vinous and malt liquors in Ocala, Precinct No. 1, Marion County, Florida, at Number 114 South Magnolia Street, and that ever since that date the petitioner has been engaged in carrying on the business of a liquor dealer at said place. That the diagram hereto attached is a correct representation of said place of business, that at the counter marked 'White' liquors are sold only to white customers, no colored customers being allowed in that part of the place of business between the ice box and the white entrance and between the wall on the left and the white counter. That at the place marked 'Colored Entrance' the colored customers enter and are served at the counter marked 'Colored;' that white customers, if they so desire, are also permitted to enter at the colored entrance and be served at the colored counter; that in the rear of the place of business is a wareroom, which is used for storage. Between the colored counter and the white counter is a cash register about two feet wide by four feet high. That the distance between the end of the white counter and the end of the colored counter is seven feet, and there is space enough between the cash register and the respective counters to allow one person at a time to pass through. That extending from the partition wall on the left to within four feet of the cash register is a partition reaching from floor to ceiling across the room, which, with the ice box completely cuts off from view one class of customers from the other, that is to say that white customers at the white

counter cannot see colored customers at the colored counter; that the petitioner operates said business, giving his personal attention thereto, and employs one bartender and one porter; that the moneys received from both white and colored customers go into one cash register, no separate accounts being kept of the two counters; and that both white and colored bars are run together as one enterprise.

That prior to the passage of the Act of 1913, upon which this prosecution is based in the cities of Tampa, Plant City, St. Petersburg, it was a custom among the saloon men and liquor dealers to separate the white bar from the colored bar operating one from a different point from the other in separate buildings and in different parts of the city a half or three-quarters of a mile apart, under separate managers, in some instances leasing out the colored bar privileges, operating the same under one license, which practice was carried on until after the passage of the Act of 1913.. That the word 'Saloon' and the word 'Barroom' and the word 'Bar' are sometimes used interchangeably one with the other in the common usage among men."

WAREROOM.

Colored Counter.

Fixtures.

Fixtures.

Cash Register.

Ice Box.

Partition.

White Counter.

Fixtures.

Fixtures.

WALL.

Partition Wall.

Colored Entrance.

White Entrance.

STREET.

The case is well briefed by the attorneys of the respective parties, and a solution of the question is attempted by the application of established rules of construction.

It is among other things contended by the plaintiff in error that a comparison of the language of the quoted paragraph of the Act of 1913, with the language of the statute law as it stood before the Act of 1913, (see Chapter 5597, Acts of 1907) shows a purpose in the Act of 1913, to apply a more stringent rule in granting licenses. The Act of 1907 required a license *for each place of business only*. The Act of 1913 requires a license "for each place of business and each bar or place where liquor is sold to customers." This statute must be construed in the light of the recognized policy in this State to keep the races from commingling in public places, such as hotels, restaurants, railroad depots and the like. It is a police policy intended to prevent friction and preserve the peace. Railroad depots as a rule have two waiting rooms, one for white and one for colored patrons. They are usually connected with the same ticket office. The same agent sells tickets to both classes of passengers. Because this is done would we say there are two depots, or two places of business, or two ticket offices? We do not think so. So in this case there is but one saloon or bar-room. There is an entrance for white patrons and one for colored. The white patron in going to the bar for his refreshment is separated from the colored; but the arrangement is such that the same bartender can wait on both. Behind the long bar the same facilities and the same servants are provided for customers. It is essentially one place of business, so arranged as to separate the races in procuring drinks at the bar in accordance with the well recognized policy in this State to which we have referred. Hochstadler v.

VOL. 67, JANUARY TERM, 1914.        433

Pinellas Pack. Co. v. Clearwater Cit. Gro. Asso.—Opinion of Court.

State, 73 Ala. 24. Applying the statute to the facts of this case, we think the defendant in error had but one bar or place of business, and the order discharging him from custody is therefore affirmed.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL AND WHITFIELD, J. J., concur.